UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **RONALD ROBINSON,** | ) |
| Plaintiff, | ) |
| v. | ) Case No. 23-cv-03823 (APM) |
| **DISTRICT OF COLUMBIA,** | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ronald Robinson is a former teacher in the District of Columbia Public School ("DCPS") system. Plaintiff began teaching at Jefferson Middle School in the 2017–2018 school year. In May 2018, Plaintiff's position at Jefferson was eliminated, and in August 2018, DCPS terminated Plaintiff's employment. Plaintiff asserts various employment discrimination causes of action against Defendant District of Columbia:[1] (1) hostile work environment under Title VII of the 1964 Civil Rights Act and the D.C. Human Rights Act (DCHRA) (Counts I & II), (2) retaliation under Title VII, the DCHRA, and the Americans with Disabilities Act ("ADA") (Counts III, IV, & V), and (3) failure to accommodate under the ADA (Count VI).[2] Before the court is Defendant's Motion to Dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), ECF No. 10 [hereinafter Mot. to Dismiss]. For the reasons that follow, the court grants Defendant's Motion to Dismiss without prejudice and with leave to amend.

---

[1] "DCPS is *non sui juris*—that is, non-suable as an entity separate from the District of Columbia." *Blue v. District of Columbia*, 850 F. Supp. 2d 16, 22 (D.D.C. 2012).

[2] Plaintiff's Complaint repeats "Count II" for both DCHRA hostile work environment and Title VII retaliation, and "Count V" for both ADA retaliation and failure to provide reasonable accommodation. The court refers to the claims in the order in which they appear in the Complaint.

## I. BACKGROUND

The court accepts Plaintiff's factual allegations as true and "construe[s] the complaint 'in favor of the Plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)).

Plaintiff is an African American male who suffers from post-traumatic stress disorder ("PTSD"), anxiety, insomnia, and depression. Pl.'s Compl., ECF No. 1, ¶¶ 10–11. Prior to his employment at Jefferson, Plaintiff taught at Wilson High School, another school within the DCPS system. *Id.* ¶¶ 12–22.[3] While at Wilson, Plaintiff requested ADA accommodations to help manage his disabilities, including that a neutral party be present during performance evaluations with his superiors "to avoid hostile interaction which exacerbated his medical issues." *Id.* ¶ 20. Plaintiff's doctor eventually recommended medical leave in September 2016 due to a fraught work environment. *Id.* ¶ 21. In February 2017, DCPS granted Plaintiff an ADA accommodation by transferring him to another school. *Id.* ¶ 22.

In August 2017, DCPS notified Plaintiff that he would receive a job placement at Jefferson. *Id.* ¶ 23. Upon Plaintiff's transfer to Jefferson, its principal, Principal Dohmann, said that he would honor several of Plaintiff's ADA accommodations. *Id.* ¶ 24. Dohmann agreed that Plaintiff could have a neutral party present during his evaluations as Plaintiff had requested at Wilson. *Id.* Additionally, Dohmann permitted Plaintiff to collaborate with Jefferson's music teacher once he became accustomed to the school and workload. *Id.*

---

[3] Although the Complaint seemingly includes claims based on Plaintiff's time at Wilson, *see* Compl. ¶¶ 12–22, 48–70, Plaintiff clarified in his opposition brief that his claims are based solely on his time at Jefferson, *see* Pl.'s Mem. Opp'n to Mot. to Dismiss, ECF No. 13 [hereinafter Pl.'s Opp'n], at 3. The court thus limits its Rule 12(b)(6) analysis to the alleged events occurring at Jefferson.

Notwithstanding these promises, on December 7, 2017, Dohmann refused to allow a neutral party to be present during Plaintiff's first performance evaluation at Jefferson. *Id.* ¶ 25. Dohmann then evaluated Plaintiff at a score lower than expected based on previous feedback and did not discuss the basis for the score with Plaintiff. *Id.* Dohmann delivered the evaluation in such a manner that Plaintiff could not contest the score, contrary to the school's standard practice. *Id.* ¶¶ 25–26. Plaintiff's union later instructed Dohmann that he had to redo Plaintiff's evaluation by February 2018, as Plaintiff's "late ADA transfer to [Jefferson] did not give sufficient time for his performance to be adequately and fairly observed and evaluated." *Id.* ¶ 30. Plaintiff informed Dohmann of the extension on December 13, 2017, but Dohmann neither conducted another evaluation nor invalidated his previous one. *Id.* ¶ 31.

Around the same time, Dohmann informed Plaintiff of a complaint against him by the music teacher with whom Plaintiff was supposed to collaborate as part of his ADA accommodations. *Id.* ¶¶ 24, 27. Plaintiff became aware that the music teacher's complaint was filed before his evaluation, which he believed affected his score. *Id.* ¶ 27. Dohmann did not ask Plaintiff for his version of events surrounding the music teacher's complaint, but rather instructed him to stay away from any place the music teacher frequented. *Id.* ¶¶ 27–28. Plaintiff therefore could no longer collaborate with the music teacher. *Id.* ¶¶ 24, 28. Plaintiff further believed that the music teacher's complaint against him was racially motivated, and that Dohmann's directive for Plaintiff to stay away from her was a "racially stereotypical implication that he was a threat." *Id.* ¶ 29.

On January 8, 2018, Plaintiff made an ADA accommodation request to DCPS based on a new PTSD diagnosis. *Id.* ¶ 32. Despite this request, Plaintiff was given more classes to teach without his input or discussion. *Id.* ¶ 33.

3

On January 22, 2018, Plaintiff complained about discrimination, retaliation, and harassment (though he does not say to whom). *Id.* ¶ 34. Days later, Plaintiff protested to Dohmann that students in his classroom had made several racist comments; Dohmann told Plaintiff that he "would simply have to live with it." *Id.* ¶ 35. In the "ensuing months," Plaintiff made several complaints to Dohmann regarding his students' serious behavior disruptions, "including frequent bullying, acts of violence, and gang threats to [Plaintiff] and his family." *Id.* ¶ 36. Dohmann told him to stop making so many complaints and requests that his students be removed, lest it reflect poorly on Plaintiff's classroom management and impact his final evaluation. *Id.*

In May 2018, Dohmann assigned a new Assistant Principal to evaluate Plaintiff. *Id.* ¶ 37. On May 11, 2018, Plaintiff received confirmation that he had been placed on the Jefferson staff for a budgeted full-time position in the 2018-2019 school year. *Id.* ¶ 38. However, two weeks later, Dohmann informed Plaintiff that his position would be eliminated, and there would be no role for Plaintiff at Jefferson. *Id.* ¶ 39. Plaintiff requested medical leave the following day. *Id.* ¶ 40.

On May 30, 2018, Plaintiff spoke to a DCPS Equal Employment Office ("EEO") officer, who agreed to continue Plaintiff's accommodation request to facilitate a job placement at another school. *Id.* ¶ 44. The EEO officer informed Plaintiff that other DCPS EEO personnel had ridiculed Plaintiff as a "troublemaker" who faked his disabilities and fabricated discrimination complaints. *Id.*

DCPS had a policy whereby it would place teachers whose roles had been eliminated in comparable positions at their current school if such positions were available. *Id.* ¶ 40. Plaintiff was not placed in an available and comparable teaching position at Jefferson, without explanation by DCPS. *Id.* ¶ 41. Plaintiff's employment was terminated on August 9, 2018, while he was on

medical leave. *Id.* ¶¶ 41–43. Plaintiff's health benefits were retroactively terminated on November 12, 2018. *Id.* ¶ 47.

Plaintiff filed a discrimination charge with the United States Equal Employment Opportunity Commission ("EEOC") on January 30, 2019. *Id.* ¶ 8. The EEOC found reasonable cause of an ADA violation from April 2018 to September 2018, and issued Plaintiff a right to sue letter for ADA violations on September 25, 2023. *Id.* Plaintiff filed suit on December 26, 2023.[4]

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Though the court must credit factual allegations, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," *id.*, and "the court need not accept inferences [that] are unsupported by the facts set out in the complaint," *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

---

[4] Once a plaintiff receives a "right to sue" letter from the EEOC, he has 90 days to file claims that are "reasonably related" to the original EEOC charge. *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995). Under normal circumstances, Plaintiff would have had to file his claims by December 24, 2023, 90 days after receiving his right to sue letter. However, December 24, 2023 was a Sunday, and December 25, 2023 was a federal holiday. *See* Fed. R. Civ. P. 6(a)(1)(C) ("[I]f the last day [of a time period to file] is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."). Accordingly, Plaintiff's claims are not barred from the outset.

## III.   DISCUSSION

Defendant moves to dismiss the complaint on both procedural and substantive grounds. First, it argues that all of Plaintiff's allegations of discriminatory action before April 5, 2018, are time-barred. Second, it contends that Plaintiff failed to plead viable hostile work environment, retaliation, and failure to accommodate claims. Because the timeliness question varies slightly by type of claim, it is addressed separately in each section below.

### A.   Counts I and II: Hostile Work Environment under Title VII and the DCHRA

To state a claim under Title VII based on a hostile work environment, a plaintiff must allege facts showing "that his employer subjected him to discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (internal quotation marks and citation omitted). Plaintiff must plausibly allege that "(1) [he] was a member of a protected class; (2) [he] was subjected to unwelcome harassment; (3) the harassment occurred because of [his] protected status; and (4) the harassment had the effect of unreasonably interfering with the plaintiff's work performance and creating an intimidating, hostile, or offensive working environment." *Harrison v. Off. of the Architect of the Capitol*, 964 F. Supp. 2d 81, 100 (D.D.C. 2013) (citing *Davis v. Coastal Int'l Sec., Inc.*, 275 F.3d 1119, 1122–23 (D.C. Cir. 2002) and *Curry v. District of Columbia,* 195 F.3d 654, 660 (D.C. Cir. 1999)), *aff'd sub nom., Harrison v. Off. of Architect of Capitol*, No. 14-5287, 2015 WL 5209639 (D.C. Cir. July 16, 2015). Liability can attach where an employer knew or should have known of the harassment by others but failed to remediate it. *See Curry*, 195 F.3d at 660. "[T]he legal standard for establishing discrimination under the DCHRA is substantively the same as under Title VII," so these claims rise and fall together. *Motley-Ivey v. District of Columbia*, 923 F. Supp. 2d 222, 233 (D.D.C. 2013) (internal

quotation marks omitted); *see also Barrett v. Covington & Burling LLP*, 979 A.2d 1239, 1245 (D.C. 2009) (applying the federal standards to a DCHRA hostile work environment claim).

### 1. Timeliness of Plaintiff's Hostile Work Environment Claim

Title VII plaintiffs "must timely exhaust their administrative remedies before bringing their claims to court," *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010) (internal quotation marks and alterations omitted), and "a timely administrative charge is a prerequisite to initiation of a Title VII action in the District Court," *Jarrell v. U.S. Postal Serv.*, 753 F.2d 1088, 1091 (D.C. Cir. 1985). Where the allegedly discriminatory act occurs in the District of Columbia, an EEOC charge must be filed no more than 300 days after such an act occurs. *See* 42 U.S.C. § 2000e-5(e)(1); *Carter v. George Washington Univ.*, 387 F.3d 872, 879 (D.C. Cir. 2004) (noting the "worksharing agreement" between the EEOC and the D.C. Office of Human Rights). A timely EEOC charge tolls the DCHRA's one-year limitations period. *Estenos v. PAHO/WHO Fed. Credit Union*, 952 A.2d 878, 886 (D.C. 2008).

A hostile work environment generally "consists of several individual acts that 'may not be actionable on [their] own' but become actionable due to their 'cumulative effect.'" *Baird v. Gotbaum*, 792 F.3d 166, 168 (D.C. Cir. 2015) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) [hereinafter *Morgan*]). The Supreme Court has acknowledged that the "very nature" of a hostile work environment claim "involves repeated conduct." *Morgan*, 536 U.S. at 115. Given this nature, if "an act contributing to the claim occurs within the filing period, the entire time period of the hostile work environment may be considered by a court for the purposes of determining liability." *Id.* at 117. However, "[b]oth incidents barred by the statute of limitations and ones not barred can qualify as 'part of the same actionable hostile environment claim' *only* if they are *adequately linked* into a coherent hostile environment claim," such as if "'they involve

7

the same type of employment actions, occur relatively frequently, and are perpetrated by the same managers.'" *Baird v. Gotbaum*, 662 F.3d 1246, 1251 (D.C. Cir. 2011) [hereinafter *Baird I*] (emphasis added) (alterations omitted) (quoting *Morgan*, 536 U.S. at 120–21); *see also Leftwich v. Gallaudet Univ.*, 878 F. Supp. 2d 81, 94–95 (D.D.C. 2012) (applying the same time requirements to DCHRA hostile work environment claims).

Plaintiff filed his one and only EEOC charge on January 30, 2019. Compl. ¶ 8. Accordingly, for Plaintiff's Title VII hostile work environment to be timely, he must allege at least one racially discriminatory act that occurred *after* April 5, 2018—that is, 300 days prior to the filing of his EEOC charge.[5] Defendant argues that Plaintiff has failed to do so. *See* Mot. to Dismiss at 6; Def.'s Reply in Supp. of Mot. to Dismiss, ECF No. 14 [hereinafter Def.'s Reply], at 1–2. The court agrees. Plaintiff fails to allege any act "contributing" to the alleged hostile work environment within the filing period (*i.e.,* after April 5, 2018) that is "adequately linked" with those outside the period.[6]

---

[5] It is unclear from Plaintiff's Complaint whether his DCHRA hostile work environment claim is based on race or on his membership in another class protected by the DCHRA. *See* Compl. ¶¶ 59–61. If Plaintiff meant to lodge his DCHRA hostile work environment claim based on his membership in a protected class other than race, his rote recital of the elements of his claim failed to alert the court to that possibility. *See Twombly*, 550 U.S. at 555 (noting that it is "a plaintiff's obligation to provide the grounds of his entitlement to relief," which "requires more than labels and conclusions[] and a formulaic recitation of the elements of a cause of action").

[6] Defendant contends that the DCHRA statute of limitations began running again when the EEOC gave Plaintiff his right to sue letter on September 25, 2023. Mot. to Dismiss at 6 (citing *Ibrahim v. Unisys Corp.*, 582 F. Supp. 2d 41, 45 (D.D.C. 2008) and *Miller v. Gray*, 52 F. Supp. 3d 62, 69 (D.D.C. 2014)). Defendant thus argues that the time between Plaintiff's receipt of his notice to sue letter and his filing of this lawsuit should be counted against the DCHRA statute of limitations, and Plaintiff can only make out a claim under the DCHRA for discriminatory acts occurring after July 6, 2018. *Id.* at 6–7. The court agrees with this argument, but not with Defendant's estimation of time. Plaintiff's DCHRA claim was tolled as of January 30, 2019, the date that he filed his charge with the EEOC. *See Estenos*, 952 A.2d at 886*;* Compl. ¶ 8. Plaintiff's DCHRA claim based on discriminatory acts occurring within one year prior to that date, *i.e.,* after January 30, 2018, were not untimely so long as Plaintiff's charge remained before the EEOC. However, the clock began running again on September 25, 2023, when EEOC provided Plaintiff with his right-to-sue letter. *See Ibrahim*, 582 F. Supp. 2d at 45–46; Compl. ¶ 8. Plaintiff filed his Complaint on December 26, 2023, 92 days after the EEOC relinquished jurisdiction over his claim. Therefore, Plaintiff's DCHRA claims are timely only for acts occurring after May 2, 2018. Since the court concludes that the acts after April 5, 2018, neither fit with Plaintiff's hostile work environment theory nor "adequately link[]" to those beforehand, it need not address further Defendant's DCHRA statute of limitations argument shortening the limitations window beyond that date.

Plaintiff contends that the following allegedly discriminatory acts occurred after April 5, 2018: (1) in the "ensuing months" after January 25, 2018, Dohmann failed to correct the actions of Plaintiff's students after Plaintiff lodged complaints (the court generously reads "ensuring months" to reach beyond April 5), Compl. ¶ 36; (2) in May 2018, Dohmann assigned a new Assistant Principal to evaluate Plaintiff, *id.* ¶ 37; (3) on May 25, 2018, Plaintiff's position at Jefferson was eliminated after he was told that he had been placed on the Jefferson staff and budgeted with a full-time position, *id.* ¶¶ 36–37; (4) after Plaintiff's position was eliminated, DCPS failed to place Plaintiff in a comparable teaching position, *id.* ¶¶ 41–42; (5) on May 30, 2018, Plaintiff spoke with a DCPS EEO officer who agreed to his accommodation request to facilitate a budgeted job placement at another school, but told Plaintiff that he was known as a "troublemaker," *id.* ¶ 44; (6) on August 9, 2018, DCPS terminated Plaintiff, *id.* ¶ 45; and (7) in November 2018, DCPS retroactively terminated his medical insurance benefits, *id.* ¶ 47.

Plaintiff does not allege how any of these actions support his theory of hostile work environment based on his race. According to his Complaint, his race-based hostile work environment consisted of "unwelcome degrading, derogatory, and dismissive remarks"; the "ignoring [of] threats to his safety, [and] disregarding [of his] accommodations"; and the "increas[ing] [of his] workload and assignments." Compl. ¶¶ 52–53, 55. But none of the post-April 5 acts listed above contributed to the hostile work environment, as he alleges it. Instead, his claim seems to arise, if at all, from earlier acts, such as those allegations about not having a neutral party present during his performance evaluation in December 2017, *id.* ¶ 25; Dohmann's allegedly racialized response to the music teacher's complaint and revocation of her assistance to Plaintiff, *id.* ¶¶ 27–29; Dohmann's failure to redo Plaintiff's performance evaluation by February 2018, *id.* ¶¶ 30–31; the increased number of classes he was assigned and informed of in January 2018, *id.*

9

¶ 33; and Dohmann's failure to help after Plaintiff complained of students making racist comments to him on January 22 and January 25, 2018, *id.* ¶ 35.

These pre-April 5, 2018 acts cannot, however, rescue his theory of hostile work environment because they are not "adequately linked" to those occurring after that date. Plaintiff has not alleged that the post-April 5, 2018 actions "involve[d] the same type of employment actions, occur[red] relatively frequently, and [were] perpetrated by the same managers" as those beforehand. *Baird I*, 662 F.3d at 1251 (internal quotation marks and alterations omitted). To the contrary, Dohmann is rarely involved in post-April events, and the alleged incidents involve almost completely different kinds of employment actions in substance and in kind.

Accordingly, Plaintiff fails to plead a timely hostile work environment claim. None of Defendant's alleged conduct after April 2018 support his hostile work environment theory, and Plaintiff cannot rely on the pre-April 2018 incidents to save the claim because they are not "adequately linked" to those that follow.

        2.      *Failure to State a Plausible Claim*

Plaintiff's hostile work environment claims fail for another reason: he has not stated a plausible claim. Even assuming that the post-April 2018 acts are "adequately linked" to earlier ones, the alleged discriminatory conduct is not "sufficiently severe or pervasive" to rise to the level of a hostile work environment. *Baloch*, 550 F.3d at 1201 (internal quotation marks omitted).

In determining whether a work environment is "hostile," a court must consider the "totality of the circumstances," including "the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Id.* (citation omitted). "The bar for demonstrating a hostile work environment is a high one." *Achagzai v. Broad. Bd. of Governors*, 170 F. Supp. 3d 164, 183 (D.D.C. 2016). Title VII and the DCHRA are

10

"not intended to function as . . . 'general civility code[s]' that regulate[] 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" *Holston v. Yellen*, 630 F. Supp. 3d 47, 59 (D.D.C. 2022) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)) (Title VII); *see Clemmons v. Acad. for Educ. Dev.*, 107 F. Supp. 3d 100, 120 (D.D.C. 2015) (applying the same reasoning to the DCHRA).

Few of Plaintiff's allegations have anything to do with his race. *See Nurridin v. Goldin*, 382 F. Supp. 2d 79, 107 (D.D.C. 2005) (finding that, for a hostile work environment to be actionable, "it must be clear that the hostile work environment was the result of discrimination based on protected status"). And, for those that do explicitly mention race, Plaintiff offers little information about the frequency or severity of the supposedly "unwelcome degrading, derogatory, and dismissive remarks" to which he was subjected. Compl. ¶ 52.

Plaintiff makes one conclusory allegation about being the object of what he perceived to be a racially motivated complaint by a coworker and an allegedly racially discriminatory response to that complaint by Dohmann. *See id.* ¶¶ 27–29. However, Plaintiff provides no facts that would allow the court to discern the nature or contents of the complaint or his supervisor's response. Plaintiff also claims that he was the object of "racist comments" by his students and that Dohmann failed to correct this environment. *See* Compl. ¶ 35. But, again, Plaintiff fails to plead any facts regarding the "volume, nature or content" of these comments. *Horsey v. U.S. Dep't of State*, 387 F. Supp. 3d 97, 109 (D.D.C. 2019). Without more information, Plaintiff has not plausibly alleged a race-based hostile environment, as opposed to the "ordinary tribulations of the workplace." *Faragher,* 524 U.S. at 788 (internal quotation marks omitted); *see also Foxworth v. McDonough*, 712 F. Supp. 3d 1, 10–12 (D.D.C. 2024) (dismissing a hostile work environment claim for failure to allege severe or pervasive conduct).

11

Accordingly, the court dismisses Plaintiff's Title VII hostile work environment claim (Count I). Because his DCHRA hostile work environment claim (Count II) rises and falls with the Title VII claim, *see Motley-Ivey*, 923 F. Supp. 2d at 233, the court dismisses it as well.

### B.  Counts III, IV, and V: Retaliation under Title VII, the DCHRA, and the ADA

To state a claim for retaliation under Title VII, the DCHRA, or the ADA, "a plaintiff must plausibly allege that (1) [he] engaged in statutorily protected activity, (2) [he] suffered a materially adverse action by [his] employer, and (3) the two are causally connected." *Spence v. U.S. Dep't of Veterans Affs.*, 109 F.4th 531, 539 (D.C. Cir. 2024) (internal quotation marks omitted) (Title VII); *see Smith v. District of Columbia*, 430 F.3d 450, 455 (D.C. Cir. 2005) (ADA); *Kimmel v. Gallaudet Univ.*, 639 F. Supp. 2d 34, 44 (D.D.C. 2009) (citing *Carpenter v. Fed. Nat'l Mortgage Ass'n*, 174 F.3d 231, 235 n.3 (D.C. Cir. 1999)) (DCHRA). An action is "materially adverse" when "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006) (internal quotation marks omitted). Importantly, the adverse action must have occurred within the 300-day window preceding the filing of an EEOC charge for the federal claims and within the one-year statute of limitations for the DCHRA claim. *See Austin v. Am. Inst. for Rsch.*, 75 F. Supp. 3d 247, 255 (D.D.C. 2014) (citing *Morgan*, 536 U.S. at 110) (Title VII and ADA retaliation claims); *Leftwich*, 878 F. Supp. 2d at 93, 97 (DCHRA).

Defendant contends that any basis for Plaintiff's retaliation claims falls outside the 300-day window preceding January 30, 2019. Def.'s Reply at 2. When considering the timeliness of a federal retaliation claim, the charge must be filed with the EEOC within 300 days "'after the alleged unlawful employment practice occurred.'" *Morgan*, 536 U.S. at 109–10 (quoting 42 U.S.C. § 2000e–5(e)(1)). Unlike a hostile work environment claim, "[a] discrete retaliatory or

12

discriminatory act occur[s] on the day that it happen[s]." *Id.* at 110 (internal quotation marks omitted). Accordingly, only those retaliatory acts occurring after April 5, 2018, are timely. *See* n.6, *supra*.

Counts III, IV, and V allege "increased work assignments, informal evaluations, and revocation of ADA accommodations" as the basis for his retaliation claims, Compl. ¶¶ 60, 63, 66; *see also* Pl.'s Opp'n at 7, but Plaintiff fails to allege that he suffered any such adversity after April 2018. *See* Section III.A.1, *supra*. The retaliatory acts about which he complains all fall outside the limitations period. *See id.* ¶ 25 (revocation of neutral party accommodation in December 2017); *id.* ¶¶ 27–29 (revocation of music teacher's assistance in response to her racially-motivated complaint against Plaintiff in December 2017); *id.* ¶¶ 30–31 (improper evaluations by Dohmann in December 2017); *id.* ¶¶ 32–33 (increased number of classes in January 2018).

In his opposition, Plaintiff attempts to save these claims by asserting, for the first time, that his termination was itself a retaliatory act. He maintains that "DCPS terminated [his] employment, while on medical leave, after ridiculing him as a 'troublemaker' for his complaints and claiming that [he] fabricated his disabilities." Pl.'s Opp'n at 7. But "it is well settled law that" a plaintiff "cannot amend his . . . complaint by [a] brief[] in opposition." *Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 160 n. 7 (D.D.C. 2014). He cannot so easily fix his defective pleading.

Accordingly, the court dismisses Counts III, IV, and V of Plaintiff's Complaint.

C.     **Count VII**: **Failure to Provide Reasonable Accommodation**

Finally, Plaintiff asserts a claim for failure to accommodate under the ADA. Like the retaliation claims, this claim is timely only for a denial of a reasonable accommodation request after April 5, 2018. *See Mayers v. Laborers' Health & Safety Fund of N. Am.*, 478 F.3d 364, 368–69 (D.C. Cir. 2007) (failure to accommodate is a discrete act of discrimination), *abrogated on*

*other grounds by Green v. Brennan*, 578 U.S. 547 (2016); *see also Rand v. Geithner*, 609 F. Supp. 2d 97, 101 (D.D.C. 2009). To state a claim for failure to accommodate, Plaintiff must demonstrate that "(1) he was a qualified individual with a disability; (2) his employer had notice of his disability; and (3) his employer *denied* his request for a reasonable accommodation." *Badwal v. Bd. of Trustees of Univ. of D.C.*, 139 F. Supp. 3d 295, 312 (D.D.C. 2015) (emphasis added) (citing *Ward v. McDonald*, 762 F.3d 24, 31 (D.C. Cir. 2014)).

Plaintiff has failed to plausibly allege that his "employer denied his request for a reasonable accommodation." *See Badwal*, 139 F. Supp. 3d at 312–14. Plaintiff arguably made two requests for accommodation within the applicable time period, the first on May 26, 2018, for medical leave, and the second on May 30, 2018, for a new job placement at another school. *See* Compl. ¶¶ 40, 44. It seems from the face of the Complaint that DCPS *agreed to* both of these requests. *Id.* ¶ 44 (alleging that the EEO officer agreed to continue Plaintiff's accommodation request to facilitate his budgeted job placement at another school); *id.* ¶ 46 (identifying that Plaintiff was on medical leave during his termination). Because Plaintiff fails to state a timely claim for failure to accommodate, Count VI is dismissed.

## IV.   CONCLUSION

For the reasons stated, the court grants Defendant District of Columbia's Motion to Dismiss, ECF No. 10. It does so, however, without prejudice. Plaintiff may file an amended complaint within 30 days of issuance of this opinion.

Dated: November 8, 2024

Amit P. Mehta
United States District Court Judge